UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANITA ANDREWS,

        Plaintiff,

v.                                     Case No:  2:16-cv-814-FtM-99MRM

MIKE SCOTT, DEPUTY BRANDON
MARSHALL, SERGEANT ROBERT
KIZZIRE, DEPUTIES JOHN AND
MARY DOES and JANE AND JOHN
DOES,

        Defendants.

_____/

## OPINION AND ORDER[1]

This matter comes before the Court on Defendants Deputy Brandon Marshall ("Deputy Marshall") and Sergeant Robert Kizzire's ("Sergeant Kizzire") Motion to Dismiss (Doc. 15) filed on February 28, 2017; Defendants Sheriff Mike Scott ("Sheriff Scott") and Deputies John and Mary Does' ("Deputy Does") Motion to Dismiss (Doc. 16) filed on February 28, 2017; and Defendant Corizon, LLC's ("Corizon") Motion to Dismiss (Doc. 32) filed on March 20, 2017. Plaintiff Anita Andrews ("Plaintiff") has filed Responses in Opposition to the respective Motions to Dismiss. (Doc. 36; Doc. 37; Doc. 44). Deputy Marshall, Sergeant Kizzire, and Corizon have filed Reply-Briefs to

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Plaintiff's Responses in Opposition.  (Doc. 43; Doc. 48).  These Motions are now ripe for the Court's review.

This is a civil rights action stemming from a traffic stop that took place in the early morning hours of November 7, 2012, resulting in the arrest of Plaintiff.  On November 4, 2016, Plaintiff filed an eighteen-count Complaint[2] (Doc. 1), alleging both common law and 42 U.S.C. § 1983 claims against Defendants for false arrest/imprisonment, failure to supervise, assault/battery, intentional infliction of emotional distress, retaliation, and excessive force.  Deputy Marshall and Sergeant Kizzire are sued in their individual and official capacities, and Sherriff Scott is sued in his official capacity only.  Defendants now move to dismiss all counts for failure to state a claim, and Sheriff Scott moves to strike the prayer for punitive damages against him.

## BACKGROUND

The facts as set forth in Plaintiff's Complaint, which the Court accepts as true, are as follows: On the late evening of November 6, 2012, until the early morning of November 7, 2012, Plaintiff was a passenger in a pick-up truck driven by her friend, Keith O'Bryant ("O'Bryant"); undertaking post-election clean up by removing political signs from the public roadways and intersections.  As a result, the bed of O'Bryant's pick-up truck was filled with campaign signs.  Around 1:00 a.m., Deputy Marshall pulled O'Bryant's truck over for a broken headlight.  O'Bryant complied with Deputy Marshall's request to turn over his license and registration and informed the deputy that he was aware of the faulty headlight but had not had the opportunity to fix it.  Plaintiff alleges

---

[2] Beginning at Count 7, Plaintiff misnumbers the Counts, off by one number. For purposes of this Opinion and Order, the Court has renumbered the Counts to avoid any error or confusion.

Deputy Marshall then began interrogating the two. Refusing to answer some of the questions, Plaintiff informed Deputy Marshall of her privacy guarantees under the Constitution. Deputy Marshall then asked Plaintiff to provide identification. She asserted that she had none and was not legally required to have any as a passenger. Again, Deputy Marshall insisted that she provide identification, but Plaintiff asserted her right to refuse to disclose her name.

Marshall admitted to Plaintiff and O'Bryant that he did not suspect either of committing a crime and even commented that the couples' appearance discounted the possibility that they did anything wrong. Plaintiff alleges that Deputy Marshall had already obtained her name from O'Bryant and ran an identification check on her. Despite this, Plaintiff alleges that Deputy Marshall and several of his colleagues informed her that they were calling in "the big guns," and summoned additional officers to the scene. (Doc. 1 at ¶ 41). Deputy Marshall's supervisor, Sergeant Kizzire, was called to the scene.

After informing other officers that there were no guns or drugs in the vehicle, Plaintiff alleges that Sergeant Kizzire announced, "I'm tired of this" and proceeded to arrest her. (Doc. 1 at ¶ 42). In doing so, Sergeant Kizzire aggressively pulled her out of the vehicle, forcefully turned her around, and handcuffed her. Plaintiff was then patted down all over, including her breasts and crotch area, and directed to enter the back of the police vehicle. Deputy Marshall then asked, "So, Anita, are you going to tell us your name?" and told her that he was seizing her to "teach her a lesson." (*Id.* at ¶ 43). Deputy Marshall, Sergeant Kizzire, and the other officers at the scene huddled together to discuss how to arrest her. Plaintiff was read her Miranda rights, asked additional

questions about the campaign signs, and taken to the police station along with O'Bryant. Again, Plaintiff claims she heard one of the officers state, "we need to teach her a lesson." (*Id.* at ¶ 45).

During the car ride to the police station, Deputy Marshall explained to Plaintiff that he was arresting her for loitering and prowling. Deputy Marshall went so far as to explain that loitering and prowling was a term that officers are taught to use when they cannot tell if a crime has been committed and need a legal justification to bring someone in. When asked what she was specifically being brought in for, one of the officers stated "I don't know, but we're going to find something really good for her." (Doc. 1 at ¶ 46).

Upon arrival at the police station, Plaintiff alleges her right arm was swollen to twice its normal size due to the rough handling of the officers. Plaintiff was told that she would not be able to leave until she identified herself before being placed in isolation. Plaintiff was disrobed, left barefoot with inadequate clothing in a freezing cold room, and without aid for her swollen arm and shoulder. She then advised her jailors that she suffers from "thick blood," requiring continuing hydration and warm temperatures. Plaintiff warned officers that without salt water and an aspirin, her blood could coagulate or she could lose consciousness. She also warned that excessively cold temperatures in the jail could send her into shock and that she had not had any water for hours. None of her requests for aid were met. Instead, the officers informed her that receipt of medical assistance was conditioned on her stating her name. During the numerous instances where officers lobbied Andrews to identify herself, they called her by her full name.

When Plaintiff met with a nurse, she was refused aid. Plaintiff asserts the grounds for this denial was premised on her failure to surrender her name. At the front booking desk, Plaintiff was again told she could leave the police station if she provided her name. Eventually, Plaintiff was admitted to the county jail. The officer who handed her over stated, "She is crazy. You can do anything you want to with her." (Doc. 1 at ¶ 56).

After being booked and entering the jail, Andrews was told to disrobe. Plaintiff lost consciousness while putting on her prison wear and was told to remain on the floor until being placed in a wheelchair. Again, she requested water and aspirin but received none. Plaintiff was then taken from her jail cell and transported to the psych ward. She was pulled out of the van and told to stand up. At this point, she lost consciousness and hit her head on the concrete floor. Plaintiff remembers being pulled up by her hair and asked multiple questions. Multiple officers taunted her with the following statements: "Sit up," "Tell us your name or we will drop you again," "Tell us your name, or we will spray you," and "Tell us your name and we will give you water." (Doc. 1 at ¶ 61). At this point, Plaintiff gave in and told her name, resulting in a series of congratulatory remarks amongst the officers and jailors for finally getting her to say it.

Plaintiff was then taken to a cell "to teach her a lesson." (Doc. 1 at ¶ 62). There, Plaintiff lost consciousness and awoke to find herself surprised that she was in the psych ward. Plaintiff discovered she would not receive medical attention for at least three days. While there, Plaintiff complained of terrible headaches. Although she continued her requests for medical attention, Plaintiff received none. Plaintiff additionally requested to make a phone call or speak with a judge, which were denied.

Plaintiff spent the night in county jail prior to being "Baker Acted"[3] to the Lee County Mental Health Hospital. Plaintiff was scheduled to spend the next seventy-two (72) hours under mandatory observation. While there, Plaintiff observed personnel disagreeing over the decision to send her there because she was not suicidal and had not threatened to kill herself or others. Later that evening, Plaintiff was released after speaking with a psychiatrist. The psychiatrist concluded that "She doesn't belong in here; she can go." (Doc. 1 at ¶ 68). All charges against Plaintiff were dropped.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his claims. *See id.* at 678-79.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted). Although legal conclusions can provide the framework for a complaint, factual allegations must support all claims. *See*

---

[3] The Florida Mental Health Act of 1971 is commonly known as the "Baker Act." Fla. Stat. § 394.451 *et seq.* The Baker Act allows the voluntary and involuntary institutionalization and examination of an individual suffering from a mental illness and who is considered a harm to self, a harm to others or is self-neglectful. *Id.* at §§ 394.4625–467.

*id.* Based on these allegations, the court will determine whether the plaintiff's pleadings plausibly give rise to an entitlement to relief. *See id.* at 678-79. Legal conclusions couched as factual allegations are not sufficient, nor are unwarranted inferences, unreasonable conclusions, or arguments. *See Twombly*, 550 U.S. at 555.

Rule 8 of the Federal Rules of Civil Procedure provides parallel pleading requirements that also must be satisfied. Under this rule, "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *See id.* at 678-79. Mere naked assertions are also inadequate. *See id.*

## DISCUSSION

**A. Deputy Marshall and Sergeant Kizzire's Motion to Dismiss (Doc. 15)**

### 1. Counts I, II - 42 U.S.C. § 1983 False Arrest/Imprisonment

Counts I and II assert claims under 42 U.S.C. § 1983, alleging that Deputy Marshall and Sergeant Kizzire violated plaintiff's Fourth Amendment rights by arresting and detaining her without probable cause that she had committed the state law offense of loitering and prowling. She contends that her ongoing detention was "intentional, unreasonable," and "done to intimidate [her] with a show of force and to be vindictive." (Doc. 1 at ¶¶ 88, 99). Plaintiff further claims that the stop was without probable cause

and that the stated charges of loitering and prowling were a false pretext under which to arrest her. (*Id.* at ¶¶ 92, 103).

Deputy Marshall and Sergeant Kizzire seek dismissal of Counts I and II because there was probable cause to arrest or detain Plaintiff, arguing that Plaintiff's presence in an "unfamiliar residential neighborhood at 1 AM in a pickup truck filled with an assortment of campaign signs taken from nearby properties" amounted to probable cause. (Doc. 15 at 9). Alternatively, Deputy Marshall and Sergeant Kizzire assert that at the very least they are entitled to qualified immunity because there was arguable probable cause to arrest and detain Plaintiff.

"Section 1983 creates a private cause of action for deprivations of federal rights by persons acting under color of state law." *Laster v. City of Tampa Police Dept.*, 575 F. App'x 869, 872 (11th Cir. 2014) (citing 42 U.S.C. § 1983). An arrest qualifies as a "seizure" of a person under the Fourth Amendment. *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011); *California v. Hodari D.*, 499 U.S. 621, 624 (1991). So does the detention of a person. *Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911 (2017). The reasonableness of an arrest and detention under the Fourth Amendment "turns on the presence or absence of probable cause" for the arrest/detention. *Case v. Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009) (citing *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007)). "Probable cause to arrest exists when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013) (citation omitted). "Whether probable cause exists depends

upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

An arrest or detention without probable cause violates the Fourth Amendment, *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997), and a cause of action for damages may be asserted under § 1983. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 n.15 (11th Cir. 2010). Plaintiff has the burden of establishing the absence of probable cause to succeed on a § 1983 claim. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). To do so, plaintiff must show that no reasonably objective police officer would have perceived there to be probable cause based upon the totality of the circumstances. *Coffin v. Brandau*, 642 F.3d 999, 1006 (11th Cir. 2011). The existence of probable cause "constitutes an absolute bar" to a § 1983 claim for false arrest. *Rankin*, 133 F.3d at 1435.

In deciding whether probable cause exists, an officer is "not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed. Nor does probable cause require certainty on the part of the police." *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002) (citations omitted). The fact that the arrestee was never prosecuted, or the charges were dropped, or the arrestee was acquitted of any offense stemming from the arrest, does not impact the existence of probable cause. *Knight v. Jacobson*, 300 F.3d 1272, 1275 (11th Cir. 2002); *Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002); *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990).

An officer who makes an arrest or detention without actual probable cause is nonetheless entitled to qualified immunity in a § 1983 action if there was "arguable probable cause" for the arrest.  When qualified immunity is raised as a defense to false arrest claims, courts inquire whether arguable probable cause existed for the arrest. *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006).  "The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (quotations omitted).  Qualified immunity allows ample room for mistaken judgments to prevent officials from erring on the side of caution due to a fear of litigation. *Id.* at 1446 (quotations omitted).  A court looks to the totality of the circumstances to determine whether arguable probable cause exists. *Davis*, 451 F.3d at 763.

Here, Plaintiff was arrested for loitering and prowling under Section 856.201, which encompasses the following:

> (1) the defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals;

> (2) such loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

*State v. Ecker*, 311 So. 2d 104, 106 (Fla. 1975).  Here, accepting the facts of the Complaint as true, Deputy Marshall pulled over the pickup truck for a broken headlight around 1:00 a.m. (Doc. 1 at ¶ 33). He noted that both Plaintiff and O'Bryant were unfamiliar with the residential neighborhood in which they were stopped.  (*Id.* at ¶ 36). While executing the traffic stop, Deputy Marshall observed multiple campaign signs in

the bed of the truck and was informed by Plaintiff and O'Bryant that they were cleaning up following the election. (*Id.* at ¶ 32). Deputy Marshall admitted that he did not suspect either Andrews or O'Bryant of committing a crime and even commented that it did not look like they were doing anything wrong. Despite this, the officers continued to detain the couple and question them, ultimately arresting Plaintiff and telling her that they charge someone with loitering and prowling when they do not know what else to charge them with. Based upon these facts asserted, the Court cannot determinate as a matter of law that probable cause existed for the arrest based on the totality of the circumstances, which will continue to be borne out through the discovery process. Plaintiff has alleged enough facts to support a constitutional violation that survives a motion to dismiss.

Alternatively, Deputy Marshall and Sergeant Kizzire argue that they are entitled to qualified immunity on any false arrest claims because arguable probable cause exists. (Doc. 15 at 11-13). Again, looking to the totality of the circumstances, which at the motion to dismiss stage encompasses the well-pled allegations in Plaintiff's Complaint, the Court denies the motion to dismiss Counts I and II on qualified immunity grounds.

### 2. Count IV - Assault & Battery; Count XII - 42 U.S.C. § 1983 Excessive Force

Under Counts IV and XII, Plaintiff asserts a state law claim for assault and battery against Sergeant Kizzire for use of excessive force when arresting her. Plaintiff contends he "inflicted a harmful and offensive touching by … aggressively pulling [her] out of the vehicle, forcefully turning her around, and cuffing her hands behind her back." (Doc. 1 at ¶ 122). Plaintiff adds that the touching was intentional and done for the

purpose of humiliating her. (Doc. 1 at ¶ 123). In response, Sergeant Kizzire avers the force was proportional to that used in a custodial arrest.

Pursuant to Florida law, police officers are entitled to a presumption of good faith in regard to the use of force applied during a lawful arrest, and officers are only liable for damage where the force used is "clearly excessive." Davis v. Williams, 451 F.3d at 768 (quoting City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)). "If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." Sanders, 672 So. 2d at 47. "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances. Law enforcement officers are provided a complete defense to an excessive use of force claim where an officer 'reasonably believes [the force] to be necessary to defend himself or another from bodily harm while making the arrest.'" Id. (quoting § 776.05(1), Fla. Stat.).

Qualified immunity may be granted to an officer using force during an arrest "if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." Brown v. City of Huntsville, Ala., 608 F.3d 724, 738 (11th Cir. 2010) (citations omitted). Whether the use of such force is reasonable is then objectively evaluated "from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). The subjective officer's belief is not considered. Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008).

Here, Plaintiff was pulled out of the car, pushed against it, handcuffed, and patted down. Here, accepting Plaintiff's allegations as true, the Court finds that Plaintiff

has adequately pled an excessive amount of force in making the arrest and in her detention.  Whether the amount of force used was reasonable under the circumstances is not an issue the Court looks at at the motion to dismiss stage.

### 3.  Counts VI & VII - Intentional Infliction of Emotional Distress

Plaintiff brings state law claims for intentional infliction of emotional distress against Deputy Marshall and Sergeant Kizzire. She maintains their conduct was "extreme and outrageous," "beyond all bounds of decency," and "odious and utterly intolerable in a civilized community." (Doc. 1 at ¶ 135).  As a result, Plaintiff contends such conduct has caused her physical harm and severe emotional distress. (*Id.* at ¶ 136).  In response, both officers maintain that their conduct does not rise to the level of actionable outrageous conduct under Florida law. (Doc. 15 at 14).

To sufficiently allege intentional infliction of emotional distress, the following elements must be met:

(1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result;

(2) The conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;

(3) The conduct caused emotion[al] distress; and

(4) The emotional distress was severe.

*Gallogly v. Rodriguez*, 970 So. 2d 470, 471 (Fla. 2d DCA 2007) (citations omitted).

Here, Plaintiff alleges that the officers seized her until she learned to obey, said they needed to teach her a lesson and would find something really good for her, and taunted and teased her until she revealed her name, which they were already aware of.

The Court finds that Plaintiff plausibly alleges enough to satisfy the elements of intentional infliction of emotional distress.

### 4. Count IX, X – 42 U.S.C. § 1983 Retaliation

Plaintiff contends both officers retaliated against her for exercising her First and Fourth Amendment rights. (Doc. 1 at ¶¶ 139, 145). Plaintiff claims she had a First Amendment right to question the authority of both officers and safeguard her privacy from intrusive questioning, refuse to provide her name, and question whether the officers had a basis to believe she was engaged in criminal activity without fear of retaliation. (*Id.* at ¶¶ 140, 146). In response, Deputy Marshall and Sergeant Kizzire contend that Plaintiff's claims under the Fourth Amendment are void because Plaintiff's constitutional claims fail. (Doc. 15 at 19). To the extent Plaintiff claims a retaliatory arrest in violation of the First Amendment, both officers respond that arguable probable cause exists and acts as a bar to any relief. (*Id.* at 20).

The Court has already addressed any possible Fourth Amendment violations in its above analysis discussing Plaintiff's false arrest claims, and finds that the allegations are adequately pled.

To allege retaliation under the First Amendment, the plaintiff must prove the following elements:

(1) That plaintiff's speech or act was constitutionally protected;

(2) That plaintiff's retaliatory conduct adversely affected the protected speech; and

(3) That there is a causal connection between the retaliatory actions and the adverse effect on speech.

*Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). "To establish a causal connection, the plaintiff must allege that the protected conduct was the motivating factor behind the defendants' actions." *Abella v. Simon*, 482 F. App'x 522, 523 (11th Cir. 2012) (quotations omitted).

Here, Plaintiff believes her arrest was retaliatory because she failed to disclose her name and questioned the officers, which is constitutionally protected speech. (Doc. 1 at ¶¶ 140, 146). Along with all of the remaining allegations as set forth in the Complaint, which the Court accepts as true, Plaintiff has plausibly alleged a claim for retaliation.

**B.** **Sheriff Mike Scott and Deputies John and Mary Does' Motion to Dismiss (Doc. 16)**

**1. Count III – 42 U.S.C. § 1983 Failure to Supervise, Train, and Take Corrective Measures**

Plaintiff asserts a claim for failure to supervise, train, and take corrective measures against Sheriff Scott.[4] Plaintiff alleges that Sheriff Scott "promulgated and maintained a *de facto* unconstitutional custom, policy, or practice of permitting, ignoring, and condoning and/or encouraging officers, deputies, and other employees and agents to use pre-textual allegations of 'Loitering and Prowling' to unlawfully arrest citizens." (Doc. 1 at ¶ 106). Turning to the night of her arrest, Plaintiff alleges that Deputy Marshall was not properly trained when he arrested her under the pretext of "Loitering and Prowling" and called in Sergeant Kizzire and other deputies to the scene. (*Id.* at ¶ 106). Plaintiff attributes this lack of training to Sheriff Scott. In particular, she lists Scott's deficiencies in training as follows:

---

[4] All claims against Sheriff Scott are brought against him in his official capacity.

    (a) Educate officers in the standards of law enforcement, and about the limits of a traffic stop;

    (b) Ensure that [Lee County Sheriff's Office ("LCSO")] officers to understand both the concepts of reasonable suspicion and probable cause, and the natural limits of those concepts;

    (c) Instruct LCSO officers on how to keep from abusing the power reposed in them, including training them on the usage of force, how to attend appropriately to medically challenged arrestees, and training officers to not falsely report on official documents (including reporting conditions for either probable cause or mental health commitments).

(Doc. 1 at ¶ 110). Plaintiff argues that this lack of training contributed to tortious conduct including, "being subjected to the use of excessive force, false arrest, and cruel and unusual punishment through deliberate indifference to [her] worsening condition." (Id. at ¶ 112). In response, Sheriff Scott contends this claim fails because Plaintiff does not assert an underlying constitutional violation because the officers' actions were supported by probable cause and recites conclusory statements. (Doc. 16 at 8-14).

Under § 1983, suits against an officer in his official capacity are simply "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). Thus, a suit against an officer in his official capacity is, in effect, a suit against the county. *Martin v. Wood*, 648 F. App'x 911, 914 (11th Cir. 2016) (citation omitted). To state a § 1983 claim against a county, the plaintiff must prove the following elements:

    (1) that the [plaintiff's] constitutional rights were violated;

    (2) that the [county] had a custom or policy that constituted deliberate indifference to that constitutional right; and

    (3) that the policy or custom caused the violation.

*McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). With regard to policy or custom, the plaintiff must necessarily "show a persistent and wide-spread practice." *Id. at 1290*.

Besides custom or policy violations, municipal employees may also be liable "under § 1983 when its employees cause a constitutional injury as a result of the municipality's failure to adequately train or supervise its employees." *Martin*, 648 F. App'x at 914 (citation omitted). If asserting a § 1983 claim for failure to train, the inadequate training must amount to a "deliberate indifference to the rights of persons with whom the [municipal employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To demonstrate this indifference, "a plaintiff must put forward some evidence that the municipality was aware of the need to train or supervise its employees in a particular area." *Am. Fed'n of Labor & Cong. of Indus. Orgs.*, 637 F.3d 1178, 1189 (11th Cir. 2001). Plaintiff must show that it was obvious that "the municipality's failure to train or supervise its employees would result in a constitutional violation" and that "the city made a deliberate choice not to train its employees." *Id.* (quotation marks omitted).

Here, the Court has found that Plaintiff has adequately alleged a constitutional violation; thus, at this stage in the proceedings there is a constitutional violation to premise Plaintiff's failure to train claim upon. For these reasons, the Court denies the motion to dismiss Count III.

### 2. Counts V & XV – Assault & Battery

Plaintiff brings claims for assault and battery against Sheriff Scott (Count V) and Deputy Does (Count XV). Plaintiff seeks to hold Sheriff Scott vicariously liable for the

conduct of Sergeant Kizzire and other LCSO officials. (Doc. 1 at ¶ 127). Specifically, she maintains Sergeant Kizzire inflicted a harmful and offensive touching when arresting her, and the other LCSO officials inflicted a harmful and offensive touching by "dragging her up by her hair, holding her by the neck/collar of her prison suit, and threatening to spray her with a hose." (*Id.* at ¶ 124). In response, Sheriff Scott avers that Sergeant Kizzire used reasonable force during the arrest.

The Court has already found that Plaintiff has adequately pled a claim for assault and battery against Sergeant Kizzire's regarding his use of force during the arrest and detention; thus, the request to dismiss Count V fails.

With regard to Count XV, Plaintiff requests leave to amend her Complaint to name the John and Mary Doe Deputies. The Court will not allow the amendment as the substitution of actual parties would not relate back and the four-year statute of limitations has run. *See Wayne v. Jarvis*, 19 F.3d 1098, 1102-03 (11th Cir. 1999). Therefore, Count XV will be dismissed with prejudice.

### 3. Count VIII – 42 U.S.C. § 1983 Retaliation

Plaintiff brings a retaliation claim against Sheriff Scott in his official capacity and Sherriff Scott argues it should be dismissed because there was probable cause for Plaintiff's arrest. As the Court has found that Plaintiff has adequately alleged an underlying constitutional violation, the claim survives a motion to dismiss.

### 4. Count XI – 42 U.S.C. § 1983 Excessive Force

Plaintiff brings a retaliation claim against Sheriff Scott in his official capacity and Sherriff Scott argues it should be dismissed because the conduct alleged is not

unconstitutional. As the Court has found that Plaintiff has adequately alleged an underlying constitutional violation, the claim survives a motion to dismiss.

### 5. Count XIII – 42 U.S.C. § 1983 Failure to Provide Medical Care

Plaintiff brings a failure to provide medical care claim against Sheriff Scott. Upon her arrival to the station, Plaintiff contends the "LCSO officers observed a swollen arm in handcuffs," placing them on notice of her circulatory problems. (Doc. 1 at ¶ 174). Plaintiff alleges she "made LCSO jailors aware of her serious medical condition, and her need for immediate and continued hydration, aspirin and moderate temperature, and made them aware that without those specific conditions by which she kept her body in equilibrium, the consequences could range from passing out to going into shock." (*Id.* at ¶ 174). Despite being in custody for over twelve hours, Plaintiff alleges she did not receive any hydration and consequently, "passed out and hit her head on the hard floor at least four times." (*Id.* at ¶¶ 174-175). After booking her, she alleges overhearing the officers making statements such as, "she is crazy" and "do whatever you want to with her." (*Id.* at ¶ 176).

Plaintiff maintains Sheriff Scott has "a *de facto* policy, custom, or practice of allowing arrestees to be medically mistreated." (Doc. 1 at ¶ 177). Building on this assertion, she adds that Sheriff Scott "was on notice for the need for instruction, guidance, and proper policies and procedures to ensure that arrestees and detainees were not medically mistreated or wrongfully incarcerated on pretense of mental defects." (*Id.* at ¶ 178). In response, Sheriff Scott argues that Plaintiff fails to allege the existence of an unconstitutional policy or custom. (Doc. 16 at 23). Instead, he responds that Plaintiff asserts mere conclusory allegations. (*Id.* at 23-24).

"Deliberate indifference to a detainee's serious medical needs requires: 1) an objectively serious medical need and 2) a defendant who acted with deliberate indifference to that need." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (citation omitted). A serious medical need "is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008). "For liability, the defendant must have 1) subjective knowledge of a risk of serious harm, 2) disregard that risk, and 3) display conduct beyond gross negligence." *Pourmoghani-Esfahani*, 625 F.3d at 1317. "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). "The reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *Id.* (citation omitted).

Here, the Court finds that Plaintiff has adequately pled that LCSO acted with deliberate indifference to Plaintiff's needs.

### 6. Count XIV – 42 U.S.C. § 1983 False Arrest

Plaintiff brings a false arrest claim against Sheriff Scott in his official capacity and Sherriff Scott argues it should be dismissed because there was probable cause for Plaintiff's arrest. "There is no respondeat superior liability making a municipality liable for the wrongful actions of its police officers in making a false arrest." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (internal citation omitted). Therefore, the motion to dismiss is granted and Count XIV is dismissed with prejudice.

### 7.  Count XVII – Negligent Hiring

Plaintiff brings a claim for negligent hiring of Defendant Corizon Health against Sheriff Scott, alleging that Corizon had a record of negligence and recklessness that Sheriff Scott knew or should have known about. (Doc. 1 at ¶ 210). Plaintiff further alleges that reasonably careful and prudent law enforcement officers would have investigated Corizon's record of negligence and recklessness. (*Id.* at ¶ 210). In response, Sheriff Scott avers that Plaintiff does not state the necessary elements of such a claim and alleges no facts to show that Corizon acted outside the scope of employment. (Doc. 16 at 22-23).  The Court agrees.

> Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment. [T]he alleged acts by employees giving rise to liability for negligent supervision must occur outside the employees' scope of employment.

*Daley v. Scott*, No. 2:15-cv-269-FtM-29DNF, 2015 WL 4999215, at *4 (M.D. Fla. Aug. 19, 2015) (citations and quotations omitted).

Here, Plaintiff does not allege facts to establish that the Corizon employees acted outside the scope of their employment. At best, Plaintiff makes conclusory statements concerning Corizon's record of negligence and recklessness. As such, the Court dismisses Count XVII without prejudice with leave to amend.

### 8. Count XVIII – Custom, Policy, or Practice Causing Constitutional Violations

Plaintiff brings a claim for custom, policy, or practice causing constitutional violations against both Sheriff Scott and Corizon in the same Count.  This is a shotgun pleading as it pleads allegations against two defendants under a single count and in any

event is duplicative of Count XIII - failure to provide medical care. Furthermore, an unconstitutional policy or practice is an element of certain 1983 claims, not an independent cause of action. The Court will dismiss the Count.

**C.    Corizon, LLC's Motion to Dismiss (Doc. 32)**

Plaintiff brings a claim for negligent hiring against Corizon (Count XVI). She alleges that Corizon knew or should have known of its employees' incompetence and negligent dispositions (Doc. 1 at ¶¶ 201-02). Plaintiff further alleges that Corizon should have known that this incompetence would lead to the injuries of her and other detainees. (*Id.* at ¶¶ 203-04). In response, Corizon contends its employees were not acting outside the scope of employment. Alternatively, Corizon suggests that Plaintiff's claim is effectively a medical malpractice claim.

> Negligent supervision occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment. [T]he alleged acts by employees giving rise to liability for negligent supervision must occur outside the employees' scope of employment.

*Daley v. Scott*, No. 2:15-cv-269-FtM-29DNF, 2015 WL 4999215, at *4 (M.D. Fla. Aug. 19, 2015) (citations and quotations omitted).

Here, Plaintiff does not allege facts to establish that Corizon employees acted outside the scope of their employment. At best, Plaintiff makes conclusory statements concerning Corizon's incompetence and negligence. As such, the Court dismisses Count XVI without prejudice and will allow amendment.

**C. Punitive Damages**

Sheriff Scott moves to dismiss or strike the punitive damages request because punitive damages are not available against a Sheriff who is sued in his official capacity. The Court agrees.  Plaintiffs cannot recover punitive damages from government officials sued in their official capacities. *Colvin v. McDougall*, 62 F.3d 1316, 1319 (11th Cir. 1995).  As such, to the extent Plaintiff demands punitive damages against Sheriff Scott (or any of the deputies) in their official capacity, the request is stricken.

Accordingly, it is now

**ORDERED:**

(1) Defendants Deputy Brandon Marshall and Sergeant Robert Kizzire's Motion to Dismiss (Doc. 15) is **DENIED**.

(2) Defendants Sheriff Mike Scott and Deputies John and Mary Does' Motion to Dismiss (Doc. 16) is **GRANTED in part and DENIED in part**.  Count XVII is **DISMISSED without prejudice** to filing an Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.  Counts XIV, XV, and XVIII are **dismissed with prejudice**.

(3) Defendant Corizon, LLC's Motion to Dismiss (Doc. 32) is **GRANTED.**  Count XVI is **DISMISSED without prejudice** to filing an Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.

**DONE** and **ORDERED** in Fort Myers, Florida this 1st day of September, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record