UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANITA ANDREWS,

        Plaintiff,

v.                                                          Case No: 2:16-cv-814-FtM-99MRM

MIKE SCOTT, DEPUTY BRANDON
MARSHALL, SERGEANT ROBERT
KIZZIRE, DEPUTIES JOHN AND
MARY DOES, JANE AND JOHN
DOES and CORIZON HEALTH,
INC.,

        Defendants.
_____/

## **OPINION AND ORDER**[1]

This matter comes before the Court on Defendant Corizon Health, Inc.'s Motion to Dismiss (Doc. 77) filed on July 10, 2018. Plaintiff Anita Andrews filed a Response in Opposition (Doc. 88) on August 13, 2018, to which Corizon replied (Doc. 91). For the following reasons, the Motion is denied.

## **BACKGROUND**

This is a civil rights action stemming from a traffic stop that took place in the early morning hours of November 7, 2012, resulting in the arrest and detention of Plaintiff in

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

the Lee County Jail. On November 4, 2016, Plaintiff filed an eighteen-count Complaint (Doc. 1), and is currently proceeding on a sixteen-count Amended Complaint (Doc. 64), alleging both common law and 42 U.S.C. § 1983 claims against Defendants. Relevant here, Plaintiff alleges two Counts against Defendant Corizon Health, Inc. - deliberate indifference for failure to provide medical care under Section 1983 (Count 14), and breach of contract for Corizon's failure to provide necessary medical services to Andrews (Count 16).

The Court previously denied the law enforcement defendants' Motion to Dismiss based in part on qualified immunity with leave to amend (Doc. 53), which Defendants Brandon Marshall and Robert Kizzire appealed. The case was stayed during the pendency of the appeal. The Eleventh Circuit affirmed (Doc. 70) and the stay was lifted. The Court directed Corizon to respond to the Amended Complaint[2], and Corizon moves to dismiss, arguing that Andrews fails to state a claim of constitutional magnitude, and the breach of contract claim fails because Andrews is not a third-party beneficiary to the contract. (Doc. 77).

The facts are detailed in this Court's previous Opinion and Order (Doc. 53), and the Eleventh's Circuit's Opinion (Doc. 70); therefore, the Court will only recite the facts relevant to the Court's consideration of the issues raised by Corizon, which mainly relate to the medical care (or lack thereof) that Plaintiff received while in Defendants' custody.

**A. Arrest and Detention**

On the late evening of November 6, 2012 (an election day), until the early morning of November 7, 2012, Plaintiff was a passenger in a pick-up truck driven by her friend,

---

[2] The law enforcement Defendants filed an Answer to the Amended Complaint. (Doc. 66).

Keith O'Bryant, undertaking post-election clean up by removing political signs from the public roadways and intersections. Around 1:00 a.m., Deputy Brandon Marshall with the Lee County Sheriff's Office (LCSO) pulled O'Bryant's truck over for a broken headlight. After Andrews refused to provide the officer with identification, she was forcefully arrested for loitering and prowling and taken to the Lee County Jail.

At the time of the arrest, Corizon employees provided medical and mental health care to inmates in the Lee County Jail. Upon arrival at the police station, Plaintiff's right arm was swollen to twice its normal size due to the rough handling by the officers. Plaintiff was told that she could not leave until she identified herself before being placed in isolation. Plaintiff was disrobed, left barefoot with inadequate clothing in a freezing cold room, and without aid for her swollen arm and shoulder. She then advised her jailors she suffers from "thick blood," requiring continuing hydration and warm temperatures. Plaintiff warned officers, and a Corizon nurse, that without salt water and an aspirin, her blood could coagulate, and she could lose consciousness. She also warned that excessively cold temperatures in the jail could send her into shock and that she had had no water for hours. None of her requests for aid were met. Instead, the officers informed her that receipt of medical assistance was conditioned on her stating her name. When Plaintiff met with a nurse, she was refused aid. Plaintiff asserts the grounds for this denial was premised on her failure to surrender her name.

Andrews was finally taken to a cell, where she went in and out of consciousness for several hours, hitting her head on the concrete floor. She was then taken to the mental health unit of the jail and was told she "should not expect any medical attention for at least three days." (Doc. 64, ¶ 64). While there, Andrews began suffering terrible headaches,

3

but her continued requests for medical attention were to no avail. Although she was sometimes told that she would receive treatment in a few hours, Andrews came to learn that such promises were empty.

When Plaintiff was released from the jail on November 8, 2012, she was involuntarily committed to the Lee County Mental Health Hospital for an additional 72 hours of mandatory observation based on false reports from officers about her mental state (also known as "Baker Act"). Andrews was released from the hospital on the evening of November 8, 2012 because contrary to Defendants' assertions, Plaintiff's mental state was fine.

**B. Andrews' Medical Conditions and Damages**

Plaintiff states that in the weeks following the arrest and because of the negligent failures by the Defendants' to address Andrews' injuries and medical issues, she experienced serious health related symptoms of post-traumatic stress, including nightmares, the inability to drive, refusal to leave her home, and panic attacks. She also suffered for several weeks from flu-like symptoms with aches, fevers, and chills. And the refusal to provide Andrews with the appropriate hydration combined with Andrews' thick blood condition resulted in bladder and kidney infections. Plaintiff's medical damages are severe and permanent and will require costly medical treatment.

Plaintiff states that during her detention at the Lee County Jail, she disclosed to and placed Corizon's medical personnel and employees on notice of her serious medical conditions, including, but not limited to:

a. Her swollen right arm and shoulder,

b. Her blood condition known as "thick blood", which requires continuous hydration and warmer temperatures.

> c. She advised that she had had nothing to drink for hours, felt dehydrated, and warned that: (1) without salted water and an aspirin her blood could coagulate and she could lose consciousness and (2) the excessively cold temperatures could send her into shock.

(Doc. 64, ¶ 75). Plaintiff generally alleges that Corizon had a policy of denying necessary medical and mental health services to detainees, including the provision of prescription medications. (*Id.,* ¶¶ 77-78, 80). Plaintiff states this policy or practice constitutes deliberate indifference to and/or callous disregard for the known serious medical and mental health needs of Andrews. (*Id.*, ¶ 77).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his claims. *See id.* at 678-79.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted). Although legal conclusions can provide the framework for a complaint, factual allegations must support all claims. *See id.* Based on these allegations, the court will determine whether the plaintiff's pleadings plausibly give rise to an entitlement to relief. *See id.* at 678-79. Legal conclusions

couched as factual allegations are not sufficient, nor are unwarranted inferences, unreasonable conclusions, or arguments. See *Twombly*, 550 U.S. at 555.

Rule 8 of the Federal Rules of Civil Procedure provides parallel pleading requirements that also must be satisfied. Under this rule, "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. See *id.* at 678-79. Mere naked assertions are also inadequate. See *id.*

## DISCUSSION

### A. Deliberate Indifference under 42 U.S.C. § 1983 (Count 14)

Corizon alleges that Count 14 should be dismissed for three reasons: (1) the claim lacks factual support as every mention of Corizon and its policies is by conclusory statement, (2) Andrews refused to cooperate in the provision of her care, and (3) the claim improperly includes vicarious liability as a basis, alleging that Corizon's "agents and employees" were deliberately indifferent in their treatment of her. (Doc. 77, pp. 9-10).

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws[.]" To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) defendants deprived her of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *Arrington v. Cobb C'nty*, 139 F.3d 865, 872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir.

2001). The Eighth Amendment[3] forbids "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has interpreted the Eighth Amendment to include "deliberate indifference to serious medical needs of prisoners[.]" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). A plaintiff can demonstrate deliberate indifference by establishing the defendant: (1) had a subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). For Eighth Amendment purposes, the "medical need of the prisoner need not be life threatening." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1989). In addition, each individual defendant must: (3) "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (4) "must also draw the inference." *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (citations omitted).

---

[3] As a pre-trial detainee, Andrews' rights arise from the due process clause of the Fourteenth Amendment, but her claims are subject to the same scrutiny as deliberate indifference claims under the Eighth Amendment. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009). Plaintiff states in her Response that the more appropriate amendment from which her rights derive might be the Eighth Amendment. (Doc. 88, n.1). However, because Andrews was a pre-trial detainee, her cruel and unusual punishment claim sounds properly in the Fourteenth Amendment right to due process of law rather than in the Eighth Amendment. *See Lancaster v. Monroe C'nty, Alabama*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) (overruled on other grounds by *LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009)). Either way, allegations of cruel and unusual punishment are analyzed in identical fashions regardless of whether they arise under the Due Process Clause or the Cruel and Unusual Punishment Clause of the United States Constitution. *Taylor v. Adams*, 221 F.3d 1254, 1257 n.3 (11th Cir. 2000).

Here, Count 14 alleges that while acting under color of law under its contract to provide medical care to pretrial detainees, Corizon's agents and employees acted in a deliberately indifferent manner to Andrews' serious medical needs, violating 42 U.S.C. § 1983 and her clearly established Fourth and Fourteenth Amendment rights, ignoring her most basic plea for water and aspirin. Plaintiff states that Corizon's nurse told Andrews, "she could have a glass of water and aspirin when she told the nurse her name." (Doc. 64, ¶ 184). This is so despite Corizon's nurse already knowing Andrews' name and was following up on the abusive manner in which Andrews had been treated by the deputies and jailors. (*Id.*, n. 4). Plaintiff states that Corizon's intake nurse was apprised of andrews' having gone many hours without water, was dehydrated, knew of her serious medical condition of thick blood and faced a substantial risk of serious harm "as would any layperson under the circumstances." (*Id.*, ¶ 185). Because of this, Andrews's pre-existing condition of thick blood was exacerbated, and she slipped into a state of shock, passed out, and hit her head on the concrete floor. (*Id.*, ¶¶ 186, 191). Plaintiff states this failure to hydrate constitutes an inexcusable delay under normal circumstances and is particularly egregious considering Andrews' serious pre-existing medical condition which Corizon's nurse knew of.

The Court finds that the Amended Complaint adequately states a claim for deliberate indifference under the Fourteenth Amendment. The Amended Complaint alleges that Plaintiff suffers from a serious medical need for having "thick blood which required appropriate continuing hydration, and for which she has been on a regimen of aspirin and salt water every day for decades as advised by her long-term physician." (Doc. 64, ¶ 189). A "serious medical need" is one that has been diagnosed by a physician

as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and, in either case, must be one that if left unattended poses a substantial risk of serious harm. *Kelley v. Hicks*, 400 F.3d 1282, 1284 n. 3 (11th Cir. 2005). Although Corizon argues there is no medical condition known as "thick blood", the Court will assume, without deciding, that Plaintiff's "thick blood" is a serious medical need in part because Plaintiff alleges as much which the Court accepts as true at this stage, and because Corizon provides no support for its statement. The Court can reasonably infer that Andrews' physical deterioration was not "mere negligence" or "accidental inadequacy" because the Amended Complaint avers that Andrews' serious condition was known to medical staff and left wholly untreated by Corizon.

The Court agrees that Andrews' claim is based on vicarious, rather than direct, liability against Corizon. Corizon, although a private entity, may be held liable under § 1983 because it was tasked with providing medical care to inmates and detainees in the Lee County Jail, which is a "function traditionally within the exclusive prerogative of the state." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). But because it is a corporate entity, the *Monell*[4] policy or custom requirement applies. *Ibid*. Thus, Plaintiff must allege facts that Corizon "had a 'policy or custom' of deliberate indifference that led to the violation of his constitutional right." *Craig, v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011). "Because a [corporation] rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs... must show that the [corporation] has a custom or practice of permitting it and that the [corporation's] custom or practice is 'the

---

[4] *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 690-91 (1978).

moving force [behind] the constitutional violation.'" *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (citations omitted and alterations added). For Corizon to be liable, Plaintiff must identify a policy or practice which was "the moving force" behind injury or harm to Plaintiff. *See Fields v. Corizon Health, Inc.*, 490 F. App'x. 174, 183-85 (11th Cir. 2012). And, there must be "a direct causal link between the policy or custom and the alleged constitutional deprivation." *Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

Here, Plaintiff has alleged that policies, customs, or practices of Corizon caused her harm in violation of her Fourth and Fourteenth Amendment rights. *See* Doc. 64, ¶¶ 77-8-, 192-94. Specifically, Plaintiff states that Corizon had a "de facto" policy, custom, or practice of "allowing agents and subordinates to treat arrestees/detainees with reckless indifference to their constitutional rights, including having unchecked processes for hydration and attention for a serious medical need, and unchecked processes for the misdirection of detainees to the county jail psych ward, resulting in the improper Baker Acting of detainees." (Doc. 64, ¶ 192). Corizon also had a "de facto" policy, custom, or practice of "allowing arrestees to be medically mistreated. Personnel at the Lee County Mental Health Hospital revealed to Andrews the "routine" receipt of detainees from the county hospital in a "beat up" condition, from which one can reasonably infer an ongoing custom and practice, and acquiescence to a de facto policy of medical indifference." (*Id.*, ¶ 193). Plaintiff states that Corizon also has a policy of "delaying providing necessary prescription medications to pre-trial detainees in the custody of the Lee County Sheriff at the Lee County Jail." (*Id.*, ¶ 78).

Here, Plaintiff identifies at least an unofficial custom or practice that constituted the moving force behind the alleged constitutional violation. Plaintiff has plausibly alleged,

10

and a jury could reasonably infer, that one of these alleged policies, individually or in combination, were directly or causally linked to Andrews' injuries while a pre-trial detainee in the Lee County Jail under Corizon's care. Plaintiff's argument that Andrews refused to cooperate with medical staff compels no different result at the motion to dismiss stage. In support, Corizon points to Andrews' jail records (Doc. 31-1), which Corizon requests that the Court consider without converting the motion into one for summary judgment because the records are central to Andrews' claim and their authenticity cannot reasonably be disputed. (Doc. 77, n.2). The Court declines to do so at this point because whether Plaintiff failed to cooperate (and whether her failure to cooperate was voluntary) is an issue of fact that will not be decided on a motion to dismiss. Thus, the Court finds that Count 14 of the Amended Complaint sufficiently states a § 1983 claim against Corizon to withstand a motion to dismiss.

### B. Breach of Contract (Count 16)

Count 16 is a breach of contract claim for Corizon's failure to provide necessary medical services to Andrews who is an alleged third-party beneficiary of the contract between Corizon and the LCSO as a pre-trial detainee. Corizon argues that the Count should be dismissed for three reasons: (1) the statute of limitations has run, (2) Andrews is not an intended third-party beneficiary of the contract, and (3) even if Andrews could be considered a third-party beneficiary, a claim of this type is considered a medical malpractice claim.

#### 1. Statute of Limitations

According to Fla. Stat. § 95.11, a breach of contract claim based on a written contract must be brought within five years of the breach. Here, Andrews claims the breach (failure to provide necessary medical services) occurred on November 7-8, 2012, and she included the breach of contract claim for the first time in the Amended Complaint filed on October 6, 2017. This was within five years of the breach; therefore, Corizon's first argument for dismissal fails.

### 2. Third-Party Beneficiary

Third-party beneficiary status allows a non-contracting party to enforce a contract against a contracting party.

> "Florida courts have recognized three types of third party beneficiaries to a contract: (1) donee beneficiaries; (2) creditor beneficiaries; and (3) incidental beneficiaries." *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968).... The key distinction is that the first two categories are classes of "intended" beneficiaries, who have a right to sue for enforcement of the contract, whereas the third category, "third party beneficiaries recognized as incidental beneficiaries[,] have no enforceable rights under a contract." *Id.* ... The intent of the parties is the key to determining whether a third party is an intended (*i.e.*, donee or creditor) or only an incidental beneficiary. *See, e.g., Marianna Lime Prods. Co. v. McKay*, 109 Fla. 275, 147 So. 264, 265 (1933).

*Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005). Under Florida law, "[t]he contracting parties' intent to benefit the third party must be specific and must be clearly expressed in the contract in order to endow the third-party beneficiary with a legally enforceable right." *Id.* at 982 (citing *Am. Sur. Co. v. Smith*, 100 Fla. 1012, 130 So. 440, 441 (1930)). "A party is an intended beneficiary only if [both] parties to the contract clearly express ... an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030-31 (Fla. 4th DCA 1994) (citations omitted); *see also Biscayne Inv.*

*Grp., Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 254 (Fla. 3d DCA 2005). In determining whether the contracting party intends to benefit a third-party, Florida law analyzes the "nature and terms of the contract." *Esposito v. True Color Enters. Constr., Inc.*, 45 So. 3d 554, 555 (Fla. 4th DCA 2010). "[T]he language used in a contract is the best evidence of the intent and meaning of the parties." *Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp.*, 364 So. 2d 15, 17 (Fla. 4th DCA 1978).

To establish an action for breach of a third-party beneficiary contract, Andrews must allege and prove these four elements: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract by a contracting party; and (4) damages to the third party resulting from the breach." *Networkip, LLC v. Spread Enters., Inc.*, 922 So. 2d 355, 358 (Fla. 3d DCA 2006) (citing *Biscayne Inv. Group, Ltd. v. Guar. Mgmt. Servs., Inc.*, 903 So. 2d 251, 254 (Fla. 3d DCA 2005)). Here, Plaintiff has sufficiently pled these four elements. However, Corizon argues that the case should be dismissed because Andrews is not a third-party beneficiary of the contract, relying on Section 11.10 of the contract between LCSO and Corizon.[5] The clause, which is included in the "Miscellaneous" section at the end of the contract, states:

> 11.10 <u>Other Contracts and Third-Party Beneficiaries</u>. The parties agree that the SHERIFF shall take all reasonable steps necessary to assist in obtaining third party reimbursement. The parties agree that they have not entered into this Agreement for the benefit of any third person or persons,

---

[5] Corizon states that the contract between Corizon and the Sheriff is in the record at Doc. 76, and the Court may consider the contract without converting the Motion into one for summary judgment because the contract is central to Andrews' breach of contract claim. (Doc. 77, n.3). Although the contract was not attached to the Amended Complaint, the Court agrees that where Plaintiff refers to certain documents in the complaint that are central to Plaintiff's claims, the Court may consider the documents submitted by Defendant as part of the pleadings for purposes of a Rule 12(b)(6) dismissal. *See Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

and it is their express intention that the Agreement is intended to be for their respective benefit only and not for the benefit of others who might otherwise be deemed to constitute third-party beneficiaries hereof.

(Doc. 76-1, Sec. 11.10, pp. 19-20). Plaintiff responds that it would be unconscionable for Corizon to be permitted to escape liability by wording in the contract alone, and the contract was intended to benefit pre-trial detainees such as Andrews. (Doc. 88, p. 3). In this regard, the "General Engagement" clause at the beginning of the contract (Article I) states:

> The SHERIFF hereby contracts with PHS to provide for the delivery of reasonably necessary medical, dental, mental health and substance abuse care to individuals under the custody and control of the SHERIFF and incarcerated at the JAIL. Individuals who, during the arresting process by any state, county, or municipal law enforcement officer, sustains an injury at the time of a lawful arrest, or is found to have a pre-existing illness and is immediately transported to the arresting agency to a designated hospital or medical facility prior to normal processing of such person into the JAIL, shall also be covered under this Agreement, subject to the limits established in Section 1.5.

(*Id.*, Sec. 1.1). Furthermore, Section 1.7 under Article I specifically states in part that "health care services are intended only for those inmates in the custody of the SHERIFF or other law enforcement agency lawfully arrested and to be booked into as well as in custody of the JAIL." (*Id.*, Sec. 1.7).

The Court finds after review of the contract, and specifically the above provisions, that the contract is at least ambiguous on the parties' intent to benefit third parties or a class of persons to which that party claims to belong.[6] See *Caretta*, 647 So. 2d at 1030-31. And as the case law states, a party is an intended beneficiary only if both parties to the contract clearly express such an intent. The Court will not dismiss a breach of contract

---

[6] The contract is also ambiguous as to what Section 11.10 is referring to as it also discusses third-party reimbursement.

claim when presented with an ambiguous contract. Unless it "clearly appears as a matter of law that a contract cannot support the action alleged, a complaint should not be dismissed on motion to dismiss for failure to state a cause of action." *Vienneau v. Metro. Life Ins. Co.*, 548 So. 2d 856, 859 (Fla. 4th DCA 1989). "A cardinal rule is that where the language used in a contract is ambiguous or unclear, the court may consider extrinsic matters not to vary the terms of the contract, but to explain, clarify or elucidate the ambiguous language with reference to the subject matter of the contract, the circumstances surrounding its making, and the relation of the parties." *Id.* Such evidence may be presented at the summary judgment stage.

### 3. Medical Malpractice

Corizon argues that even if Andrews is considered a third-party beneficiary, a claim of this type is considered a medical malpractice claim that is controlled by Florida's Medical Malpractice Act, which contains a complex pre-suit investigation procedure that Andrews has not followed. However, Corizon points the Court to no authority that a breach of contract claim cannot be pled instead of a medical malpractice claim. Plaintiff has clearly chosen to bring a breach of contract claim, which the Court has found is viable at this stage of the proceedings. The Court sees no reason to convert Plaintiff's breach of contract claim into one for medical malpractice, when Plaintiff herself has chosen to not bring such a claim.

Accordingly, it is now

**ORDERED:**

Defendant Corizon Health, Inc.'s Motion to Dismiss (Doc. 77) is **DENIED.**

**DONE** and **ORDERED** in Fort Myers, Florida this 13th day of September, 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record